**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Manuel Rubio,<br><br>                     Plaintiff,<br><br>     -v-<br><br>BSDB Management Inc.,<br>Marvin Neiman, and<br>Dove Lebovic,<br><br>                 Defendants. | **Civ. Action #: 19-CV-11880**<br>**(VSB)(SN)**<br><br>**OPPOSING MEMORANDUM**<br>**OF LAW** |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND, ETC.

ABDUL HASSAN LAW GROUP, PLLC
By: Abdul K. Hassan, Esq.
*Counsel for Plaintiff*
215-28 Hillside Avenue,
Queens Village, NY 11427
Tel: 718-740-1000

SERVED ON DECEMBER 7, 2020

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     FACTUAL SUMMARY ................................................................................. 3

III.    LEGAL STANDARD.................................................................................... 4

IV.     ARGUMENTS............................................................................................ 5

  1.  THIRD COUNTERCLAIM RIGHTLY DROPPED ........................................... 5

  2.  DEFENDANTS' FIRST COUNTERCLAIM IS NOT PROPERLY STATED ................. 5

  3.  DEFENDANTS' SECOND COUNTERCLAIM IS NOT PROPERLY STATED ............. 8

    (A)    FAILURE TO PLEAD CONVERSION AND INTENTIONAL CONVERSION ....... 9

    (B)    FAILURE TO PLEAD DATE OF CONVERSION .................................... 11

    (C)    ITEMS NOT IDENTIFIED/NOT SUFFICIENTLY IDENTIFIED .......................... 13

  4.  THE FAITHLESS SERVANT COUNTERCLAIM ALSO FAILS BECAUSE NEW
      YORK'S SLAVERY-ERA FAITHLESS SERVANT DOCTRINE VIOLATES THE FLSA,
      NYLL AND THE THIRTEENTH AMENDMENT OF THE U.S. CONSTITUTION............ 14

    (A)    NEW YORK'S SLAVERY-ERA FAITHLESS SERVANT DOCTRINE................ 15

    (B)    THE SECOND CIRCUIT HAS NEVER ADDRESSED THE FAITHLESS
           SERVANT DOCTRINE IN THE CONTEXT PRESENTED IN THIS CASE,
           ESPECIALLY IN LIGHT OF CERTAIN SUBSEQUENT DECISIONS ......................... 17

    (C)    DEFENDANTS' FAITHLESS SERVANT COUNTERCLAIM IS BARRED BY
           NYLL § 193, AND MUST BE DISMISSED FOR THIS REASON ALSO...................... 18

    (D)    DEFENDANTS FAITHLESS SERVANT CAUSE OF ACTION IS BARRED BY
           THE THIRTEENTH AMENDMENT ................................................................. 24

V.   CONCLUSION .......................................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC,*
　783 F.3d 383, 389 (2d Cir. 2015) ........................................................................... 4

*Advanced Water Techs., Inc. v. Amiad U.S.A., Inc.,*
　457 F. Supp. 3d 313, 317 (S.D.N.Y. 2020) ............................................................ 4

*AMF Inc. v. Algo Distributors, Ltd.,*
　48 A.D.2d 352, 356, 369 N.Y.S.2d 460, 464 (1975) .............................................. 9

*Ashcroft v. Iqbal,*
　556 U.S. 662, 677-78 (2009) ......................................................................... *passim*

*Bailey v. Alabama,*
　219 U.S. 219 (1911) ............................................................................................... 15

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
　450 U.S. 728, 740 (1981), ..................................................................................... 21

*Caserta v. Home Lines Agency, Inc.,*
　273 F.2d 943, 946 (2d Cir.1959) ........................................................................... 21

*Cf. Gliatta v. Tectum, Inc.,*
　211 F. Supp. 2d 992, 1008-09 (S.D. Ohio 2002) ..................................................... 1

*Cheeks v. Freeport Pancake House, Inc.,*
　796 F.3d 199 (2d Cir. 2015) ........................................................................... 18, 22

*Ellis v. Chao,*
　336 F.3d 114, 127 (2d Cir. 2003) ............................................................................ 4

*Ferring B.V. v. Allergan, Inc.,*
　932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013) ........................................................... 10

*Flores v. Mamma Lombardis of Holbrook, Inc.,*
　942 F. Supp. 2d 274, 278 (E.D. N.Y., 2013) ........................................................... 1

*Gortat v. Capala Bros.,*

585 F. Supp. 2d 372, 375–76 (E.D.N.Y. 2008) (collecting cases), <u>aff'd,</u> 568 F. App'x 78 (2d Cir. 2014). ......................................................................................................... 19

*Hughes Blanton, Inc. v. Shannon,*
   581 S.W.2d 538, 539 (Tex. Civ. App. 1979) ............................................................. 9

*In re Brizinova,*
   554 B.R. 64, 83 (Bankr. E.D. N.Y. 2016) ................................................................. 9

*Jacques v. DiMarzio, Inc.,*
   200 F. Supp. 2d 151, 163 (E.D.N.Y. 2002) ............................................................... 1

*L & L Painting Co., Inc. v. Odyssey Contracting Corp.,*
   No. 105126/2008, 2014 WL 4829629, (N.Y. Sup. Ct. Sep. 25, 2014), .................. 13

*Murphy v. Morlitz,* No. 15-CV-7256 (VSB),
   2017 WL 4221472, at 7 (S.D.N.Y. Sept. 21, 2017), aff'd, 751 F. App'x 28 (2d Cir. 2018), .... 12

*Phansalkar v. Andersen Weinroth & Co., LP.,*
   344 F.3d 184 (2d Cir. 2003) ........................................................................... passim

*Tlacopilco v. Chater,* No. 16-CV-1254 (VSB),
   2016 WL 11707087, at 1 (S.D.N.Y. June 29, 2016), ................................................ 22

*Torres v. Gristede's Operating Corp.,*
   628 F. Supp. 2d 447, 471 (S.D. N.Y.2008) ............................................................... 1

*Wood ex reI. U.S. v. Applied Research Associates, Inc.,*
   328 Fed.Appx. 744, 750,2009 WL 2143829,5 (2d Cir. 2009), ................................. 6

## Other Authorities

Thirteenth Amendment of the United States Constitution ................................. 2, 14, 24

12 NYCRR § 190-5 ............................................................................................... 19

NYLL § 193 ................................................................................................... passim

# I.    PRELIMINARY STATEMENT

Plaintiff Manuel Rubio ("Plaintiff" or "Rubio") submits the instant memorandum of law in opposition to the motion of defendants BSDB Management, Inc. Marvin Neiman, and Dove Lebovic (collectively "Defendants"), for leave to amend their Answer and to add/amend counterclaims. Because they intertwine and overlap, the papers and arguments set forth in Plaintiff's October 25, 2020 motion (ECF No. 23), for judgement on the pleadings dismissing Defendants' counterclaims, are hereby incorporated by reference.

Faced with obvious violations of the overtime requirements of the FLSA and NYLL which appear on the face of the pay records (Ex. 1, Statement of Facts below), Defendants in their original Answer have asserted baseless and retaliatory counterclaims against Plaintiff. (See ECF No. 6). *See, e.g., Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 163 (E.D.N.Y. 2002) (characterizing a $500,000 counterclaim against a former employee as a "troubling" example of "in terrorem tactics"). As the court found in *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 (S.D. N.Y.2008), a class action involving the assertion of counterclaims against plaintiff who sued under the FLSA and the NYLL, "these counterclaims are so flimsy that they must have been made for another purpose: to punish the individual plaintiffs for joining the FLSA suit." *See also Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D. N.Y., 2013) (allowing plaintiffs to add retaliation claims under the FLSA in response to counterclaims against them by defendants). *Cf. Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1008-09 (S.D. Ohio 2002).

On October 25, 2020 and after Defendants' repeated failure to produce records and evidence in support of their baseless and retaliatory counterclaims,  Plaintiff filed a motion for judgment on the pleadings to dismiss the baseless counterclaims on the grounds that they were not properly stated under *Iqbal/Twombly* and also because some did not exist as a matter of law

– such as negligence and other claims that are invalid under NYLL § 193.

In response, Defendants filed a motion on November 17, 2020 seeking leave to amend their answer and counterclaims. Everyone appear to agree that leave to amend should be denied where an amendment would be futile. Here, an amendment would be futile because Defendants' proposed amended counterclaims are not properly stated as explained further below.

First, Defendant was correct to drop its third counterclaim which merely expressed a hope that one day, Defendants will discover evidence of alleged wrongdoing by Plaintiff.

Second, Defendants second counterclaim under New York's slavery-era faithless servant doctrine is fatally defective because even at this stage of the proceedings with a lot of discovery completed, Defendants still are unable to identify even a single incidence of wage fraud.

In addition, as we have explained below, New York's slavery-era[1] faithless servant doctrine is invalid because it violates the FLSA, NYLL and the Thirteenth Amendment of the U.S. Constitution, along with related federal statutes. Specifically, the disgorgement feature of the faithless servant doctrine seek to forfeit/disgorge wages protected by the FLSA and NYLL and in effect force the Plaintiff to work for free, even where the employer suffers no damages or is compensated in full.

Third, Defendants proposed counterclaim fails on several grounds. At the outset, while Defendant alleges that it discovered tools missing, there is no factual allegation that the tools were in Plaintiff's possession or control thereafter or at any time, and certainly no allegation of an intentional taking.

In addition, Defendants do not allege or state a date when the alleged conversion occurred

---

[1] The term "slavery-era" is used to refer to the period during and after the civil war and until the start of the 20th Century as the occupation of the South continued after 1865 and the institutions and beliefs/practices that propagated slavery continued to exist in the South and North for many years after the formal end of the Civil War.

– further confirmation that no conversion occurred. The date of the alleged conversion is also needed to determine if the conversion claims are barred by the three-year statute of limitations for conversion claims – Plaintiff was employed for more than 30 years.

Also, Defendants have still failed to sufficiently identify the property allegedly converted by Plaintiff. Defendants only identified two items – mechanical floor drain machine and air compressor but even as to these two items, no specifics are provided to distinguish them from thousands of similar items and to confirm Defendants' ownership of them and any alleged conversion by Plaintiff.

Finally, Defendants' mention of discovery issues is a misleading distraction. Much discovery has been done by both sides and to the extent discovery is relevant, after the significant discovery conducted thus far, Defendants have not produced any documents or evidence in support of their counterclaims.

It is therefore respectfully submitted that this Honorable Court, deny Defendants motion for leave to amend in its entirety and with prejudice, and dismiss Defendants counterclaims and proposed counterclaims with prejudice.

## II.    STATEMENT OF FACTS

The allegations are more fully set forth in the complaint (ECF No. 1), Defendants' answer (ECF No. 6), and Defendants' proposed amended answer/counterclaims. (ECF No. 30-1)

In this action to recover overtime wages under the FLSA and NYLL, Defendants' liability is powerfully confirmed by their own records. For example, the documents in Exhibit 1 and 2, is just some of many weekly payroll records produced by Defendants and Plaintiff which confirm that Plaintiff was an hourly employee who was paid his straight regular rate for his weekly overtime hours (weekly hours over 40), instead of a the required 1.5 times his regular

rate – for the week of November 16, 2017, Plaintiff worked at least 19 overtime hours and was paid at his straight regular hourly rate of $39.50 for each of these 19 overtime hours by separate check. By way of further example, for the week of December 28, 2017, Plaintiff worked 16 overtime hours and was paid at his straight regular hourly rate of $39.50 for each of his overtime hours. (See Ex. 1). In another example, the payroll record in Exhibit 2 show that for the week of June 10, 2017, Plaintiff worked 16 overtime hours and was his straight regular hourly rate of $39.50 for each of his overtime hours by Defendants.

In each of the preceding examples, Plaintiff was issued one check for 40 hours and another check for the overtime hours at his straight regular hourly rate – a conscious and deliberate attempt by Defendants to violate and evade the overtime requirements of the FLSA and NYLL. The weekly payroll records produced by Defendants, many of which are confirmed by the wage records produced by Plaintiff, confirm that Plaintiff is owed at least $37,663.25 in unpaid wages for about 1907 overtime hours during the six-year recovery period for which he was paid his straight regular hourly rate by Defendants – instead of at the required overtime rate.

### III.     LEGAL STANDARD

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). "Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Advanced Water Techs., Inc. v. Amiad U.S.A., Inc.,* 457 F. Supp. 3d 313, 317 (S.D.N.Y. 2020).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), the U.S. Supreme Court addressed the well-known plausibility standard on a Rule 12(b) motion to dismiss – claims based on fraud must also meet the particularity pleading standards of FRCP § 9(b).

## IV.    ARGUMENTS

### 1.    THIRD COUNTERCLAIM RIGHTLY DROPPED

In his October 25, 2020 motion for judgment on the pleadings to dismiss Defendants' counterclaims (ECF No. 23), Plaintiff noted that Defendants' third counterclaim was purely an expression of hope and did not really allege anything that could constitute a claim. Defendants have correctly decided to drop this third counterclaim. We will also demonstrate below that hope and a "placeholder" approach are at the center of the other two counterclaims as well which should also be rejected by this Court.

### 2.    DEFENDANTS' FIRST COUNTERCLAIM IS NOT PROPERLY STATED

In Plaintiff's original motion papers, he explained as follows (ECF No. 24 pg. 15):

> [T]o the extent Defendants' counterclaims are based on any conduct less than fraud, they must be dismissed as a matter of law pursuant to NYLL § 193. However, to the extent Defendants' counterclaims are based on fraud or similar conduct, they must be dismissed because Defendants' failed to satisfy the heightened pleading requirements of FRCP 9(b) in fact, Defendants' pleading fails to satisfy the Iqbal/Twombly and even the much lower standard before Iqbal and Twombly.

In response, Defendants tries to transform its first counterclaim into a fraud cause of action under New York's faithless servant doctrine and states as follows (ECF No. 30 pg. 3 of 4):

> In his Motion, Plaintiff incorrectly describes BSDB's counterclaims as sounding in negligence or an unlawful wage deduction under New York Labor Law 193, which further supports obviating the need to brief his Motion. Plaintiff feigns ignorance as to BSDB's allegations against him even though it is clear that the gravamen of the counterclaims is his intentional act of being a faithless servant.

... As shown in the Proposed Pleading, BSDB alleges that Plaintiff, an agent of BSDB at the time, intentionally overreported the hours that he worked and those of his co-workers, thereby harming BSDB's interest.

At the outset, not only is Plaintiff ignorant about the alleged fraud/faithlessness – even more troubling, Defendants also appear to be ignorant of the alleged fraud/faithlessness – as evident by their complete failure to identify, explain and support even a single instance of fraud.

Defendants confirm that they are now accusing Plaintiff of intentionally submitting false time records in order to steal or defraud Defendants of money. Irrespective of the label given to a claim, if the gravamen of the claim is alleged fraudulent conduct as Defendants are alleging, then the claim is subject to the pleading requirements of FRCP 9(b). (See also ECF No. 24 pg. 8-10).

In *Wood ex reI. U.S. v. Applied Research Associates, Inc.,* 328 Fed.Appx. 744, 750,2009 WL 2143829,5 (2d Cir. 2009), the Second Circuit surveyed its precedents and set forth the relevant standard as follows:

> Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the pleading requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994).

The Second Circuit in *Wood* went on to uphold the dismissal of the fraud claim in that case and stated in relevant part as follows:

> These allegations are plainly insufficient under Rule 9(b). As the district court observed: the Amended Complaint "do[es] not cite to a single identifiable record or billing submission they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time." Wood, 2008 WL 2566728, at 5.

Even more compelling here than in *Wood*, Defendants' proposed amended complaint "do[es] not cite to a single identifiable record or billing submission they claim to be false, or give

a single example of when a purportedly false claim was presented for payment by a particular [plaintiff] at a specific time." In other words, of the hundreds of weekly time sheets during Plaintiff's employment which lasted more than 30 years, Defendants have not identified a single timesheet that was fraudulent and has certainly not explained with facts how any time sheet was fraudulent. It is precisely because of this failure to identify even a single instance of fraud, that Defendants first counterclaim fails as a matter of law under the FRCP § 9(b) standard, the *Iqbal/Twombly* standard and also under the lower notice pleading standard that preceded *Iqbal/Twombly*.

If Defendants had identified one or more instances of fraud and provided the relevant facts to support the allegations, we would then be able to further evaluate the faithless servant claim under the plausibility standard and determine what defenses may be appropriate such as the statute of limitations defense, defenses under the FLSA and NYLL, etc. For example, assuming Defendants were able to allege fraud/faithlessness for a specific week on the grounds that Plaintiff took two (2) hours to perform the job but they believed that he should have taken less time, we would then be able to explain that such conduct does not constitute fraud or any wrongdoing especially given the definition of work under the FLSA and NYLL. Similarly, had Defendants properly alleged even one instance of fraud we would then be able to address questions such as how alleged inaccurate reporting of hours constitute wage fraud if as Defendants claim, Plaintiff was a salaried employee – whose wages did not vary based on the quantity or quality of work as Defendants claim. In any event, any conduct short of fraud cannot be the basis for a claim against an employee like Plaintiff in light of the protections of NYLL 193. (ECF No. 24, pg 4-8). Once again, however, we need not engage in additional analysis at

this point because Defendants claims fail at the very first step – Defendants fail to identify and explain even a single instance of fraud/faithlessness.

It is sometimes helpful to understand the reasons for the plausibility standard and the particularity standard. To borrow from the Second Circuit in Wood, Defendants insincere hope that "discovery will unearth information tending to prove [their] contention of fraud, is precisely what Rule 9(b) attempts to discourage." Very compelling in this case, the parties have exchanged a lot of discovery and have even exchanged information during the Court's mediation process, and Defendants still have not produced any evidence of a single instance of fraud/faithlessness.

As the Second Circuit powerfully reminded us in *Wood*, parties should not "base claims of fraud on speculation and conclusory allegations," and "An ample factual basis must be supplied to support the charges." Defendants here have done the opposite and have relied on speculation and conclusory allegations with no factual basis at all – they have not identified with factual allegations, a single timesheet or payroll record that was fraudulent and explained how and why. As the Second Circuit further cautioned in *Wood*, Defendants must meet the applicable pleading standards which are also intended to "safeguard a defendant's reputation from improvident charges of wrongdoing" – no small matter and even more reason for Defendants' allegations of fraud/faithlessness/conversion to be addressed at the earliest possible opportunity.

### 3. DEFENDANTS' SECOND COUNTERCLAIM NOT PROPERLY STATED

Defendant's proposed conversion counterclaim fails under the *Iqbal/Twombly* pleading standards because Defendant failed to plead facts to plausibly establish: 1) that Plaintiff converted the items; 2) that any conversion was done intentionally; 3) when the alleged conversion took place; and 4) the identity of the items allegedly converted. Defendants' failure to plausibly plead one of these elements/ requirements would be fatal to its proposed conversion

claim, and here, Defendants have failed to plausibly plead all four of them.

"[T]o state a conversion claim under New York law," the claimant "must allege four elements." *In re Brizinova*, 554 B.R. 64, 83 (Bankr. E.D. N.Y. 2016). The four elements are that "'(1) the plaintiff had title to the property in question or had a right to its possession; (2) the defendant converted a specifically identified property; (3) the defendant exercised unauthorized dominion over the identified property; and (4) the plaintiff was damaged by reason of the alleged conversion.'" *Id.* (quoting *In re Harvard Knitwear, Inc.*, 153 B.R. 617, 624 (Bankr. E.D. N.Y. 1993)). *See also In re Harvard Knitwear, Inc.,* 153 B.R. 617, 624 (Bankr. E.D.N.Y. 1993) (conversion claimant must establish that "the defendant converted a specifically identified property"); *AMF Inc. v. Algo Distributors, Ltd.,* 48 A.D.2d 352, 356, 369 N.Y.S.2d 460, 464 (1975) (claimant in conversion action "must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing"). Cf. *Hughes Blanton, Inc. v. Shannon*, 581 S.W.2d 538, 539 (Tex. Civ. App. 1979) (dismissing claims that defendant converted tools used in workplace where claimant did not "establish[ ] the identity of the tools that were in defendant's possession at the time plaintiff was told he could not take them, [or] identify[ ] the tools plaintiff asserted to be missing").

### (A) FAILURE TO PLEAD CONVERSION AND INTENTIONAL CONVERSION

As the U.S. Supreme Court has explained in *Iqbal/Twombly*, the elements of a claim must be supported with sufficient facts and context in order to be pleaded with plausibility, and conclusory allegations – especially those that merely recite the elements of the claim, are not taken as true. Here, the closest Defendants came to setting forth a factual allegation as to its conversion claim is when it alleged as follows (ECF No. 30-1, ¶ 79):

> After Plaintiff was let go, it was discovered that virtually nothing remained in the facility of all the tools, supplies and materials that Plaintiff had purchased through the use of the business credit card.

Although Defendants make conclusory allegations that "Plaintiff has wrongfully and intentionally taken and misappropriated those items," (ECF No. 30-1, ¶ 79), there is absolutely no *factual* allegations in the proposed counterclaim that states that the subject tools were ever in Plaintiff's possession or control after his termination or at any other time. Even more fatal to Defendants conversion claim, Defendants also do not plead facts plausibly stating that any alleged conversion was intentional – as Defendants even fail to establish conversion by Plaintiff in the first place. See i.e. *Ferring B.V. v. Allergan, Inc.,* 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013)('The tort of conversion requires that the defendant, "intentionally and without authority, assumes or exercises control over personal property belonging to someone else." Ferring has not alleged any facts demonstrating that Allergan intentionally exercised control over Ferring property.').

At most, Defendants are alleging that they allegedly discovered tools missing and then they would like this Court to speculate that the tools were missing because Plaintiff took the tools and converted them. However, as the Supreme Court explained in *Iqbal*, allegations that do not go beyond the "speculative level," are insufficient to survive a motion to dismiss.

The Supreme Court in *Iqbal* also explained that the allegations must establish more than a mere possibility. There are numerous possible explanations for the allegedly missing tools that have nothing to do with the Plaintiff - and that require the rejection of Defendants' conversion claim against the Plaintiff. For example, any of Defendants' 150 or more employees (ECF No. 1, ¶ 14), could have taken the alleged tools from Defendants' premises. In addition, Defendants or one of their employees could been thrown out the subject tools as garbage after Plaintiff left –

especially if the tools were old or broken – assuming the tools even existed and Defendants are not making up the story.

Once again, although Defendants allegedly discovered the tools missing from the premises, there is no allegation that the tools were thereafter or at any time discovered in the possession or control of the Plaintiff. See *Iqbal*, 556 U.S. 662, 678–79 (2009)("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Here, Defendants have not even pleaded facts consistent with Plaintiff's liability as they have not set forth any facts that the allegedly converted items were in Plaintiff's possession or control at any time and they have certainly not pleaded that any such (non-existent) conversion was intentional.

Significantly, we are not aware of any case in which a Court upheld a conversion claim and where there were no supporting facts establishing that the party being sued for conversion had control or possession of the items alleged to be converted. In every case it seems, where a conversion claim was upheld, there was very good evidence that the person being sued was in possession or control of the property outside the workplace and the dispute usually involves whether such possession or control constitutes unlawful conversion as a matter of law – such as whether the possession and control was without authority, etc.

### (B) Failure to Plead Date of Conversion

In order to plausibly plead a claim, a core requirement is pleading when the claim accrued or came into existence – a date or approximate date based on facts and not speculation or guesswork. Failure to do so leads to the reasonable conclusion that the claim is concocted and does not exist – or at minimum, that suing on the claim is premature in that more basic but necessary information is needed to determine if there is a valid and plausible claim in the first

place. Suspicion and gut feeling may be enough for an investigation, but are not enough to assert a claim under the standards of FRCP Rule 11, and the plausibly standards of *Iqbal/Twombly*. Defendants' failure to plead and sufficiently plead when the alleged wrongdoing by Plaintiff occurred, is fatal to both of their proposed counterclaims – faithless servant and conversion.

Pleading when a claim accrues is also a core requirement because one of the main purposes of the *Iqbal/Twombly* plausibility standard, is to provide sufficient factual information to permit the party being sued to formulate defenses – especially affirmative defenses such as statute of limitations which are waived if not pleaded in response to the counterclaim or asserted in a motion to dismiss or for judgment on the pleadings.

In *Murphy v. Morlitz*, No. 15-CV-7256 (VSB), 2017 WL 4221472, at 7 (S.D.N.Y. Sept. 21, 2017), aff'd, 751 F. App'x 28 (2d Cir. 2018), Judge Broderick dismissed a conversion claim and stated in relevant part as follows:

> The applicable statute of limitations period for a claim seeking to recover damages for conversion is three years. See Keep on Kicking Music, Ltd. v. Hibbert, No. 15cv7464, 2016 WL 4386047, at *5 (S.D.N.Y. Aug. 17, 2016); Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010). Ordinarily, "[a]ccrual runs from the date the conversion takes place, and not from discovery or the exercise of diligence to discover." Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex., 637 N.Y.S.2d 342, 347 (1995); Hibbert, 2016 WL 4386047, at *5.10 As the alleged conversion took place at the time of the Sale, Plaintiff's conversion claim is time-barred.

Here, Defendant has failed to state when the alleged conversion occurred – not even an approximate date, for starters. According to Defendants, they discovered the missing tools after Plaintiff's employment ended but Defendants do not allege or state when the alleged conversion occurred – because there was no conversion by Plaintiff. Defendants' failure is especially fatal to their conversion claim because Plaintiff was employed by Defendants for over thirty years and

the statute of limitations for a conversion claim is three years. Also, December 2020 will be three years since Plaintiff's employment with Defendants ended.

We are not aware of any case in which a conversion claim was upheld and where the pleading party failed to plead the date of alleged conversion. Because Defendant is not entitled to amend at this stage and needs the permission of the Court, the Court should also not grant leave to amend if Defendants cannot show that their proposed counterclaims are within the statute of limitations period.

### (C) Items Not Identified/Not Sufficiently Identified

In its original counterclaim for conversion, Defendants completely failed to identify the property allegedly converted – the proposed amendment does not cure this fatal defect as Defendants now provide an insufficient description and only as to two items – mechanical floor drain machine and air compressor. In this regard, Defendants' reliance on *L & L Painting Co., Inc. v. Odyssey Contracting Corp.,* No. 105126/2008, 2014 WL 4829629, (N.Y. Sup. Ct. Sep. 25, 2014), is grossly misplaced. First, although the elements of the conversion claims are dictated by state law, the pleading standards are governed by federal law – which are higher than the pleading standards under New York State law. As such, the fact that a conversion claim can survive under state law pleading standards does not mean that it can survive under federal pleading standards. Second, in *L & L Painting Co,* there was an inventory list of the items in question. Third, in *L & L Painting Co.,* the party being used for conversion, "through the deposition testimony of Vice President Anthony Maracic, have identified Odyssey's materials, equipment and tools left on the site, including "a few trucks, [and] a couple of blast pots." As such, in L&L, the combination of the inventory lists and deposition testimony provided a higher level of identification that is not present here. Unlike the trucks in *L&L Painting Co.*, which can

be identified and verified through the inventory list and even through vehicle registrations with the State, Defendants here have provided only a general description of personal items without specific identifying information. Without such identification, Defendants are unable to establish that they owned said items and that Plaintiff converted said items – the items become indistinguishable from thousands of other such items. Moreover, in this regard, Defendants have not produced any documents or proof in discovery identifying any items alleged converted or showing that they owned any such items.

### 4. FAITHLESS SERVANT COUNTERCLAIM VIOLATES THE FLSA, NYLL AND THE THIRTEENTH AMENDMENT OF THE U.S. CONSTITUTION

In recent times, society has been knocking down statutes from the slavery era – from South to North and beyond – many passed these monuments on a daily basis without knowing their history. In the judicial context, New York's faithless servant doctrine is a monument from the slavery era whose foundation has been destroyed by subsequent federal and state statutes and which this Court needs to formally topple and invalidate - and to borrow from the U.S. Supreme Court in *Brown*, with all deliberate speed, but without further delay. The flirtation and tolerance for the slavery-era faithless servant doctrine must end, if we are to be faithful to current more superior laws as we are required to be. As such, Defendants counterclaim based on New York's slavery-era faith servant doctrine, fails for this reason as well.

The feature that distinguishes New York's faithless servant doctrine from other laws is its disgorgement/forfeiture feature where wages earned by a so-called "faithless" employee are taken from him and given to the employer even if the employer suffers no damages and even if the employer is otherwise fully compensated for any harm as the Second Circuit pointed out in *Phansalkar*. Without this feature which is clearly in violation of superior state and federal law,

the faithless servant doctrine is duplicative of other common law claims such as fraud claims and can no longer stand,

## (A) NEW YORK'S SLAVERY-ERA FAITHLESS SERVANT DOCTRINE

The origins of New York's faithless servant doctrine ("FSD") can be traced to a pair of NY Court of Appeals decisions from 1885. See *Phansalkar v. Andersen Weinroth & Co., LP.,* 344 F.3d 184 (2d Cir. 2003). Faithless servant laws took hold after slavery ended with the civil war and the adoption of the 13th Amendment in 1865. Freed slaves obviously did not have much "faith" in their former owners and these faithless servant laws were a way of keeping the dominance of the master in place and the superior position of certain segments of society which at the time was heavy segregated by race and class. These faithless servant laws spread beyond the South to states like New York. In New York, the faithless servant doctrine was a law created by the judiciary in 1885 - it is not a statute passed by the legislature or a regulation promulgated by the executive branch – authorities which are superior to common law – especially slavery-era common law like the faithless servant doctrine.

At the turn of the last century, courts began striking down faithless servant laws as being unconstitutional. In *Bailey v. Alabama*, 219 U.S. 219 (1911), the U.S. Supreme Court struck down Alabama's faithless servant law, finding that it violated the Thirteenth Amendment, among other issues. Ironically, the Supreme Court in *Bailey* stated that it would treat the challenged law as if it were passed in New York. However, while the Supreme Court was busy striking down faithless servant laws from the South, New York's faithless servant doctrine lay below the radar and has evaded constitutional and statutory scrutiny and challenge until now.

While the federal constitution was the main weapon used to strike down faithless servant laws at the tum of the last century, the arsenal has expanded greatly with the passage since then

of numerous employment laws for the protection of workers and the evolution of societal standards and the employee-employer relationship which replaced the master-servant relationship upon which the faithless servant doctrine is based. At the turn of the last century, minimum wage and maximum hour (overtime) laws came into existence after being seriously challenged by employers who were accustomed to having laws such as the faithless servant doctrine. The Supreme Court eventually upheld the minimum wage laws. In 1916, the Federal Constitution was amended to allow taxation, giving the government a right to a percentage of wages earned - a right that cannot be destroyed by the faithless servant doctrine. We then had the Social Security and Medicare Act which funded major social programs with a percentage of wages earned. In the 1930s and 1970s we had the FLSA and ERISA respectively and both state and federal labor laws added to their protections over the years, through amendment.

At this point, one would usually cite the language of the law but there is no language to cite with respect to the faithless servant doctrine. The best approach is to read the decision in *Phansalkar v. Andersen Weinroth & Co., LP.* 344 F.3d 184 (2d Cir. 2003). *Phalsalkar* reveals a mighty struggle by the Court to decipher the contours of the doctrine. The Second Circuit began by noting that the 1885 decisions giving rise to the doctrine are in conflict and have never been reconciled by the NY Court of Appeals. The Second Circuit then recited a history where lower NY Courts, in their struggle with the faithless servant doctrine have chopped off pieces here and there - actions that would violate the earlier decisions of the higher NY Court of Appeals -a lower court cannot deviate from a higher court. In fact, the Second Circuit itself was forced to declare part of a NY Court of Appeals decision as dicta to avoid complying with it. Because of the confused, conflicting and ambiguous state of the doctrine, the Second Circuit in *Phalsalkar* said it had to predict how the NY Court would write the current form of the faithless servant

doctrine. It seems that every court to encounter the faithless servant doctrine has its own conflicting view of the doctrine. Had these courts been presented with the arguments Plaintiff Rubio has made herein, they could have easily declared the faithless servant doctrine null and void and could have saved everyone from the very troubling conflicts and mess that has emerged as faithless servant jurisprudence.

**(B) THE SECOND CIRCUIT HAS NEVER ADDRESSED THE FAITHLESS SERVANT DOCTRINE IN THE CONTEXT PRESENTED IN THIS CASE, ESPECIALLY IN LIGHT OF CERTAIN SUBSEQUENT DECISIONS**

Probably the leading case in the Second Circuit dealing with NY faithless servant doctrine is *Phansalkar v. Andersen Weinroth & Co., LP.*, 344 F.3d 184 (2d Cir. 2003). As we have pointed out above, the Second Circuit in *Phansalkar*, struggled mightily to discern the substance and boundaries of the slavery-era faithless servant doctrine. However the context in *Phansalkar* is very different than we are presented with in this case and the Second Circuit as far as we know has never directly address the issues we are presented with in this case as to whether the New York's slavery-era faithless servant doctrine is in conflict with and invalid under subsequent modern day employment statutes such as NYLL § 193, the FLSA (29 USC 201 et Seq.) and NYMWA (NYLL § 650 et Seq., 12 NYCRR § 142, etc). See i.e. *Waters v. Churchill*, 511 U.S. 661, 678 (1994)("cases cannot be read as foreclosing an argument that they never dealt with"). It also appears that the U.S. Supreme Court and the Second Circuit have never addressed the constitutionality of New York's slavery-era faithless servant doctrine.

Significantly, several years after *Phansalkar* was decided, the New York Court of Appeals in *Pachter v. Bernard Hodes Grp., Inc.,* 10 N.Y.3d 609, 616, 891 N.E.2d 279, 283 (2008), reversed decisions to the contrary and held that NYLL § 193 covers all employees regardless of position

and compensation levels – prior to *Pachter,* courts had held that highly paid employees like *Phansalkar* were excluded from coverage and protection under NYLL § 193.

Even more significantly, and many years after *Phansalkar* and *Pacther,* the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), held that FLSA rights could not be waived without court approval and gave judges the authority and duty to protect the rights of employee and the public under the FLSA – from the very type of waiver/disgorgements of FLSA protected wages and rights Defendants and the pre-FLSA and pre-NYLL slavery-era faithless servant doctrine engage in. To borrow from the Second Circuit in *Cheeks*, 796 F.3d at 206, New York's slavery era faithless servant doctrine is "in strong tension with the remedial purposes of the FLSA" and is quite frankly, in direct conflict with the protections of the FLSA and NYLL – and is therefore invalid. As an FLSA gatekeeper, Judge Broderick, like almost every other judge in this courthouse, regular conducts hearings under *Cheeks* to invalidate provisions and schemes that are in conflict or strong tension with the FLSA in order to protect the interests of the public and employees under the FLSA and the wages and rights it guarantees to employees.

By way of reinforcement, a New York doctrine cannot override subsequent federal law such as the FLSA and subsequent state laws such as New York Labor Law – especially where the doctrine is from the slavery-era whose labor standards have long been rejected in favor of social progress and modern employment statutes like the FLSA and NYLL.

Given the horrific state of human rights and labor relations during the time before, during and just after the civil war, any doctrine or law from that era dealing with labor relations should be viewed as highly suspect and should carry a strong presumption of invalidity.

**(C) DEFENDANTS' FAITHLESS SERVANT COUNTERCLAIM IS BARRED BY NYLL § 193, AND MUST BE DISMISSED FOR THIS REASON ALSO**

As and for their faithless servant counterclaim, Defendants seek the following recovery (Proposed Amended Answer ¶ 74):

> The full amount of Plaintiff's theft misconduct by of over reporting his and others hours is still to be determined but is at least $157,000. and includes, without limitation, disgorgement of his wages and additional compensation that BSDB paid to him, plus prejudgment interest.

Indeed, one of the aspects of the slavery-era faithless servant doctrine that have made judges cringe is that the doctrine allows for the disgorgement of wages even where the employer suffers no damages or is fully compensated for any harm as explained in *Phansalkar*. As we will now explain further, the slavery-era faithless servant doctrine, and especially its disgorgement remedy, are in contradiction with NYLL § 193 and 12 NYCRR § 190-5.1.

It is well settled that a lawsuit against an employee is in effect a deduction within the meaning of NYLL § 193 – especially where the recovery sought is the type that is prohibited by NYLL § 193. In other words, for purposes of NYLL § 193, it makes no difference whether the employer makes the deduction/disgorgement through the weekly paycheck or through a lawsuit. See i.e, *Gortat v. Capala Bros.,* 585 F. Supp. 2d 372, 375–76 (E.D.N.Y. 2008) (collecting cases), <u>aff'd,</u> 568 F. App'x 78 (2d Cir. 2014).

Although a lawsuit based on fraudulent conduct of an employee may not violate NYLL § 193, disgorgement of the employees' wages is an egregious violation of NYLL § 193 as that goes above and beyond compensating the employer for losses.

By way of reinforcement and as set forth in the statute and regulation, NYLL § 193 permits deductions/disgorgement only where the employee consents and the deduction is for the benefit of the employee, or where the deduction is required by laws such as the tax laws which require withholding. "Faithlessness" does not satisfy any of the requirements for deductions/disgorgement of wages under NYLL § 193. In fact, NYLL § 193 was enacted to

prevent the very type of disgorgement of wages required by the slavery-era faithless servant

doctrine which is now invalid in light of NYLL § 193.

### (D) THE SLAVERY-ERA FAITHLESS SERVANT DOCTRINE IS IN CONFLICT WITH AND IS INVALID UDNER THE FLSA AND NYMWA

In addition to NYLL § 193, the federal Fair Labor Standards Act (29 USC 201

et Seq.) and the New York Minimum Wage Act (NYLL 650 et Seq., 12 NYCRR

142), as well as the regulations thereunder, also prohibit

deductions/forfeiture/disgorgements of wages protected by these laws such as overtime and

minimum wages. Simply put, faithlessness – especially faithlessness based on a slavery-era doctrine has never

been recognized as an exception or exemption under the FLSA and NYLL and is not a valid basis to waive,

forfeit or disgorge wages protected by the FLSA and NYMWA.

By way of reinforcement, any provision or doctrine, especially one based on inferior state law, that is in

strong tension or conflict with the federal FLSA is invalid under the FLSA – and by extension, under NYLL.

Here, the faithless servant doctrine is in total contradiction with the FLSA and NYMWA – legally, logically, and

morally because it seeks to disgorge and destroy the same wages the FLSA and NYLL protects based on

grounds not provided for in these statutes and jurisprudence.

Under the Supremacy Clause of the U.S. Constitution, a conflict between state law and federal law is

resolved in favor of federal law. Similarly, a conflict between a common law doctrine and a statute passed the

legislature is resolved in favor of the statute – especially where as here, the statutes in question were enacted

afterwards – and were intended to protected the very wages that the faithless servant doctrine seeks to destroy.

Moreover, there is a total incompatibility between the 18th century era when the faithless servant doctrine was

adopted and the current era in which modern and progressive labor and employment laws control. The faithless

servant doctrine is based on the master/servant relationship which was replaced by the

employer/employee relationship under statutes like the FLSA – we now have employees instead

of servants and we now have employers instead of masters.

Significantly, much of what was considered unfaithful in the 1880s, now qualifies as protected activity under the FLSA and NYLL. For example, serving a non-white customer in a segregated establishment during that time would have been considered a disloyal and faithless act requiring the disgorgement of wages. Similarly, making a claim for minimum wage and overtime pay in the 1880s would have been considered to be disloyal/faithless or even extortion but now making such a claim is considered protected activity – even if the employee is not entitled to the wage but where the claim is made in good faith. (See. i.e. 29 USC § 215, NYLL § 215). Likewise, refusing to work without minimum wage or overtime pay would have been considered unfaithful in the 1880s but such activity is today protected under the FLSA and NYLL.

In the mid-1940s, the U.S. Supreme Court in *Brooklyn Savings* and *Gangi*, famously held that unlike other statutes, the FLSA is a uniquely protective statue that prohibits private parties from waiving, forfeiting or disgorging - even retroactively, their wages and rights under the FLSA.

In 1981, the U.S. Supreme Court decided *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981), in which it cited *Brooklyn Savings* and *Gangi*, to invalidate arbitration under the FLSA and stated as follows:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

On August 7, 2015, the Second Circuit handed down its landmark decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015)*,* requiring court approval of

settlement/waiver and dismissals of FLSA claims with prejudice. Like the Supreme Court in *Barrentine*, *Cheeks* began its analysis with *Brooklyn Savings* and *Gangi*, and cited *Barrentine* for the proposition that the FLSA prevents waiver of FLSA rights – even retroactively.

In *Tlacopilco v. Chater*, No. 16-CV-1254 (VSB), 2016 WL 11707087, at 1 (S.D.N.Y. June 29, 2016), Judge Broderick stated in relevant part as follows:

> I do not believe that the logic and rationale underlying Cheeks should not also apply to dismissals without prejudice. In arriving at its conclusion in Cheeks, the Second Circuit pointed to the FLSA's objective: "Requiring judicial or [Department of Labor] approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' " Cheeks, 796 F.3d at 206 (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)). Given that the parties here acknowledge that they seek dismissal due to a settlement of the dispute, I find that the rationale underlying Cheeks should apply with equal force here. A different conclusion would mean that parties in FLSA actions could simply avoid the need for court approval by agreeing to settle without prejudice. Such a result I find to be counter to the spirit of the FLSA and of Cheeks.

Judge Broderick's decision in *Tlacopilco* as excerpted above is extremely relevant and helpful in a number of ways. First, Judge Broderick also focused on the FLSA's logic and rational "to extend the frontiers of social progress" in terms of wage rights to determine what is proper under the FLSA. The slavery era faithless servant doctrine is completely incompatible and in contradiction with the social progress embodied and reflected in the FLSA – especially in terms of the wages and rights protected by the FLSA. In this regard, the slavery era faithless servant doctrine seeks to destroy/disgorge the same wages that are protected by the FLSA and NYLL – overtime and minimum wages.

Second, Judge Broderick recognized that when faced with an issue in the context of the FLSA, we should also resort to the rationale, spirit and purpose of the FLSA. In fact, as the Second Circuit noted in *Cheeks*, waiver and forfeiture of rights that are in tension with the remedial

purpose of the FLSA are invalid. In fact, a direct waiver/disgorgements/forfeiture of FLSA wages which is allowed and required under the faithless servant doctrine is one of the most obvious and direct violations of the FLSA's protection of the very wages that Defendants seek to disgorge under the faithless servant doctrine.

Notably, *Cheeks* granted federal judges the authority and the duty to protect the rights of the public and employees under the FLSA. An exercise of that authority and duty requires an invalidation od the slavery era faithless servant doctrine.

By way of reinforcement, the Second Circuit in *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943 (2d Cir. 1959), stated in relevant part as follows:

> Appellant's argument of estoppel ignores that this case lies in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy. An agreement by appellee not to claim overtime pay for the work here in question would be no defense to his later demanding it. Overnight Motor Transp. Co. v. Missel, 1942, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682. Similarly, an express release by the employee is invalid, and this even though the release is limited to the claims for liquidated damages and was made in settlement of a bona fide dispute, D. A. Schulte, inc. v. Gangi, 1946, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114. Surely acts by an employee leading the employer to believe he is satisfied with the payments being made to him, even if we could find these here, could not have greater effect than a contract to that end. On precisely this basis we held, in De Pasquale v. Williams- Bauer Corp., 1945, 151 F.2d 578, certiorari denied 1946, 328 U.S. 836, 66 S.Ct. 1007, 90 L.Ed. 1612, that employees' weekly receipt of accounts stated without complaint did not estop them from recovering overtime compensation and liquidated damages. See Robertson v. Alaska Juneau Gold Mining Co., 9 Cir., 1946, 157 F.2d 876, 879, certiorari denied 1947, 331 U.S. 823, 67 S.Ct. 1314, 91 L.Ed. 1839.

Like judge Broderick in *Tlacopilco*, the legendary Judge Friendly reasoned by analogy to address an open question under the FLSA. In *Caserta* as excerpted above, he reasoned that if an employee cannot waive or forfeit FLSA wages by agreement, he certainly cannot do it by lesser means such as conduct. Similarly, here, if an employee

cannot waive FLSA rights by agreement or conduct, he certainly cannot waive it based on faithlessness – especially under a doctrine that was created in the slavery era and which is totally incompatible with the FLSA and NYLL which protect the same wages the faithless servant doctrine seeks to destroy – overtime and minimum wages.

### (E) FAITHLESS SERVANT DOCTRINE BARRED BY 13th AMENDMENT

The FLSA and the NYMWA are popularly known as modem day anti-slavery statutes because they prevent employers from working their employees for free. However, there is an older and superior authority in the form of the Thirteenth Amendment of the United States Constitution that explicitly prohibits involuntary servitude except as punishment for a criminal conviction. New York's faithless servant doctrine violates the Thirteenth Amendment and the statutes that enforce it.

In *Vinluan v. Doyle,* 60 A.D.3d 237, 246, 873 N.Y.S.2d 72, 79 - 80 (2d Dept., 2009), the New York Appellate Division summarized the jurisprudence of the Thirteenth Amendment and related federal statutes in the civil and employment context and we adopt those arguments herein.

Very significantly, the Supreme Court as discussed in *Vinluan*, has made clear that under the Thirteenth Amendment "[w]hat the state may not do directly it may not do indirectly." It would obviously be illegal for New York State and this Court to force Plaintiff Rubio to work for the next three years against his will without pay, and it is equally clear that Plaintiff *Rubio* cannot be forced to work for the last three or more years without pay - forcing someone to work without pay is called involuntary servitude. As the Supreme Court also pointed out in *Bailey*, regardless of the law's purpose, it is "its natural and inevitable effect"

24

that really matters for purposes of Thirteenth Amendment analysis, and analysis under statutes dealing with involuntary servitude and peonage. Whether Plaintiff is forced to work in the future without pay or whether he is forced to repay wages he already earned for his labor, we have the "same result" as the Supreme Court said in *Bailey* - in both situations we have involuntary servitude without pay. While the Thirteenth Amendment allows involuntary servitude as punishment after conviction for crime, we obviously do not have any conviction in this civil case.

The faithless servant doctrine and its invocation in this case is much worse than the laws struck down in U.S. Supreme Court precedents such as *Bailey*. In *Bailey* and its progeny, the workers were required to work off wages they had already received. Here however, Plaintiff is in effect being forced to give his labor to the employer for free and without pay. Very significantly, *Bailey* and progeny involved situations where the workers were being punished after a criminal conviction. Here, however, Plaintiff has not been convicted of anything. Even worse is the period of time. In *Bailey* and progeny, the period of involuntary labor was relatively short but here, the period of free and involuntary labor in question appears to be more than six years – Plaintiff was employed by Defendants for more than 30 years. Clearly, no Court in modern day America can approve such madness.

Based on the foregoing, New York's faithless servant doctrine is invalid under the Thirteenth Amendment and the statutes that enforce it, and Defendant's faithless servant counterclaim must be dismissed as a matter of law, for this reason as well.

## V.    CONCLUSION

Based on the foregoing, Plaintiff kindly requests that this Honorable Court: 1) deny with prejudice, Defendants' motion for leave to amend their Answer/counterclaims; 2) dismiss Defendants' counterclaims and proposed counterclaims with prejudice; and 3) grant Plaintiff such other, further and different relief in his favor as the Court deems just and proper.

Dated: Queens Village, New York
      December 7, 2020
Respectfully submitted,

Abdul Hassan Law Group, PLLC

 /s/ Abdul Hassan_____
Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue
Queens Village, NY 11427
Tel: 718-740-1000
Email: abdul@abdulhassan.com
*Counsel for Plaintiff Manuel Rubio*

\#