USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/8/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 :
MANUEL RUBIO, :
 :
                     Plaintiff, :
 : 19-CV-11880 (VSB)
     -v- :
 : ORDER
 :
BSDB MANAGEMENT, INC., et al., :
 :
                     Defendants. :
------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

       The parties have advised me that they have reached a settlement in this Fair Labor Standards Act ("FLSA") case. (Doc. 53.) Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). In the absence of Department of Labor approval, the parties must satisfy the Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). Because (1) the settlement agreement contains an overbroad release and (2) the parties do not provide adequate documentation to support their request for attorney's fees and costs, I do not find that it is fair and reasonable and the parties' request for settlement approval is DENIED.

      **I.    Legal Standard**

       To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors: (1) the [plaintiff's] range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the

product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.* "All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). The Second Circuit has described a presumptively reasonable fee as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (internal quotation marks omitted). A fee may not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d at 602 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 606 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). An award of costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks omitted). "When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

## II. Discussion

The parties have submitted a letter detailing why they believe the settlement reached in this action, and the contemplated attorney's fees, are fair and reasonable. (Doc. 54.) I have independently reviewed the settlement agreement and the supporting evidence in order to determine whether the terms of the settlement agreement are fair, reasonable, and adequate.

### A. *Settlement Amount*

I first consider the settlement amount. The agreement provides for the distribution to Plaintiff of $23,522, not inclusive of attorney's fees and expenses. (Doc. 54, at 2.) Counsel represents that Plaintiff believes he is entitled to $37,663.25 to $47,663.25. (*Id.*) While the settlement amount is therefore a fraction of the total amount Plaintiff claims is owed to him, the parties argue that this settlement is fair in light of the litigation and collection risks particular to this case.

Plaintiff alleges that throughout the course of his employment by Defendants between 1974 and 2018, Defendants failed to pay Plaintiff an overtime rate of at least 1.5 times his regular rate of pay for all hours worked in excess of forty hours in a week. (Doc. 1 ¶¶ 15–19.) Plaintiff also claims that Defendants failed to provide Plaintiff with severance pay. (*Id.* ¶ 20.) Plaintiff further alleges that he is entitled to damages for Defendants' statutory record-keeping violations. (*Id.* ¶¶ 48–49.) Defendants deny Plaintiff's allegations that he is owed wages and damages, and contest that Plaintiff was provided with wage statements as required under the New York Labor Law ("NYLL"), though the parties dispute whether the wage statements were fully compliant with the statutory requirements. (*See* Doc. 54, at 2.)

The parties were represented by attorneys experienced in the area of wage-and-hour litigation and their settlement amount appears to be the product of arm's length negotiations. (*Id.* at 3); *see Almond v. PJ Far Rockaway, Inc.*, No. 1:15-cv-06792-FB-JO, 2018 WL 922184, at *1

(E.D.N.Y. Feb. 15, 2018) (noting that Plaintiff's counsel "has been practicing law since 2001," "has litigated over 400 employment and wage cases in federal court," and "has argued a number of significant employment cases before the Second Circuit"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010) (describing counsel as having "exclusively litigated 150–plus wage and hour cases, including class actions" for seven years). The settlement was preceded by over a year's worth of litigation, including a nearly year-long discovery period and an unsuccessful mediation under the Court's mediation program. In addition, the litigation risks and potential costs of continued litigation militate in favor of settlement of this case. Continuing further with the litigation would introduce uncertainty and Plaintiff would have to expend time and money on discovery, motion practice, and trial. Finally, there is no basis for me to believe that there was any fraud or collusion involved in the settlement. Therefore, based on the representations of the parties and my own analysis of the totality of the circumstances present here, the settlement amount appears reasonable. However, as discussed below, because of the lack of adequate documentation supporting the parties' fee request and the overbroad release provisions, I am unable to find the agreement reasonable.

### B. *Attorney's Fees*

I next consider the attorney's fees contemplated in the settlement agreement. The attorney's fees sought are $12,478, which represent a one-third contingency fee of $11,510, plus $718 in filing and service costs. (Doc. 54, at 5.) This amounts to approximately a third of the total settlement amount of $36,000. Plaintiff's counsel does not attach any billing records, hourly rate information, or proof of costs to the request for approval, but simply submits a retainer agreement providing that counsel's contingency fee would be the greater of "one-third (1/3) of all sums recovered on [Plaintiff's] behalf" or a "reasonable hourly fee [multiplied by] the number of hours spent by [counsel] on [Plaintiff's] behalf" or, in the alternative, a separate recovery of fees determined by the

court or through settlement. (Doc. 54-2 ¶ 12.) Regarding the lack of supporting documentation for their fees request, the parties explain that my previous orders "did not mention time records," and argue that under *Fisher*, "time records are not required where the fees under the retainer agreement are a percentage of recovery and are not based on hours/time expended." (Doc. 54, at 3.)[1]

As an initial matter, *Fisher* does not excuse the requirement that a fee applicant support a request for attorney's fees and costs with sufficient documentation. In fact, the Second Circuit explicitly affirmed in that case that "all applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Fisher*, 948 F.3d at 600 (internal quotation marks omitted). "District courts in this Circuit—and at least one unreported Second Circuit case—have consistently held that they have the authority to review an attorneys-fee provision in a settlement agreement for reasonableness, regardless of whether the fee represents the share agreed upon in a contingency-fee arrangement." *Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 WL 3765750, at *3 (S.D.N.Y. Aug. 8, 2019). "Even when a plaintiff has entered into a contingency-fee arrangement with his attorneys, and even when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id*. at *4 (internal quotation marks omitted).[2]

Although courts in this Circuit "routinely award attorneys in FLSA settlements one-third of the total recovery in fees," *Aguirre v. Torino Pizza, Inc*., No. 18-CV-2004 (KMK), 2019 WL 126059, at *4 (S.D.N.Y. Jan. 8, 2019), the parties have not provided the requisite documentation by

---

[1] The parties state, however, that they will provide time records "if required by the Court." (Doc. 54, at 3.)

[2] The parties point to a number of cases in which courts in this Circuit have approved attorney's fee awards of roughly one-third the total recovery where consistent with a contingency agreement between plaintiffs and their attorneys. *See, e.g.*, Doc. 38, *Rivera v. NYC Motorcars Corp.*, No. 20-cv-2701 (JMF). However, I see no reason to depart from custom in the instant case, nor do the parties provide any compelling excuse that they should be allowed to bypass the requirement of justifying the reasonableness of their fee request with contemporaneous time records.

which I can assess the reasonableness of their fee requests or perform a lodestar cross-check, *see Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 182 (S.D.N.Y. 2015) (denying fee request where plaintiff's counsel provided no evidence of the amount of time that the lawyers spent on the case); *Mamani v. Licetti*, No. 13-CV-7002 (KMW)(JCF), 2014 WL 2971050, at *3 (S.D.N.Y. July 2, 2014) (denying one-third fee request where the parties failed to provide "any information to aid the Court in assessing the reasonableness of the fee award").

Accordingly, I cannot approve the parties' request for attorney's fees and costs at this time.

### C. *Overbroad Release*

The settlement agreement contains a sweeping "Release" provision that I find to be overbroad. (*See* Doc. 54-1 ¶ 2.) Under the agreement, Plaintiff, "on behalf of himself, his heirs, successors, representatives, assigns, attorneys, agents, executors, and administrators" ("Releasor") releases Defendants and "their present, past and future owners, affiliates, related business entities, corporate parents, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, reinsurers, attorneys, heirs, agents, executors, and administrators, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these including but not limited to Concourse Nursing & Rehabilitation Center Inc.," (collectively, "Releasees"), not only from wage-and-hour claims, but also from "from any and all claims, whether known or unknown, which [Plaintiff] ever had, now have, or may have against Releasees." (*Id.* ¶ 2(a), (b).) This includes claims "of any nature whatsoever known or unknown, suspected or unsuspected, that Claimant had, now has, or in the future may or could have, arising out of or relating to any matter up to the date of the execution of this Agreement, whether under any theory." (*Id.* ¶ 2(a).) Defendants, "on behalf of themselves, their agents, assignees, heirs, executors, administrators, beneficiaries, trustees, and legal representatives," in turn release Plaintiff and his "heirs, successors, assigns, affiliates, parent

organizations, subsidiaries, directors, owners, shareholders, members, agents, attorneys, legal representatives, and managers" from "any and all charges, complaints, claims, causes of action, suits, debts, liens, contracts, rights, demands, controversies, losses, costs and or expenses, including legal fees and any other liabilities of any nature whatsoever known or unknown, suspected or unsuspected, that Defendants had, now have, or in the future may or could have, arising out of or relating to any matter up to the date of the execution of this Agreement." (*Id.* ¶ 2(e).)

        The release provisions at issue are plainly overbroad as they require Plaintiff to waive a broad set of claims that goes far beyond wage-and-hour issues or the claims at issue in this lawsuit. *See Velazquez v. Estate of Antonier*, No. 16 Civ. 5605 (HBP), 2017 WL 5067577, at *3 (S.D.N.Y. Nov. 2, 2017) (rejecting settlement agreement that released defendant from "all claims relating to, arising out of, or in any way connected with [the plaintiff's] former employment, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with [the defendant] that occurred prior to the date of approval of this settlement by the Court."). This result is "further broadened by the [Agreement's] expansive definitions of ['Releasors' and 'Releasees'], . . . which could be applied to absurd effect." *Lim-Tom v. Carlay Gas Heat Corp.*, No. 20-CV-1682 (BCM), 2021 WL 536114, at *3 (S.D.N.Y. Jan. 28, 2021) (internal quotation marks omitted); *see also Souffrant v. 14-15 Mertens Place Corp.*, No. 19-CV-5482 (BCM), 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (rejecting mutual releases that "appear to extend to numerous persons and entities only tenuously connected to this action, and purport to release them not only from claims arising out of that connection but also from wholly unrelated claims"). "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting

*Lopez*, 96 F. Supp. 3d at 181). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)). For this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action.'" *Cionca v. Interactive Realty, LLC*, No. 15-CV-05123 (BCM), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)).

Defendants' so-termed "reciprocal" release of claims against Plaintiff, (*see* Doc. 54-1 ¶ 2(e)), does not render the release provision fair and reasonable. "The fact that the general release is styled as mutual, although favoring the settlement, does not salvage it, absent a sound explanation for how this broad release benefits the plaintiff employee." *Gurung*, 226 F. Supp. 3d at 229; *see also Martinez v. SJG Foods LLC*, No. 16-CV-7890 (RA), 2017 WL 2169234, at *2 (S.D.N.Y. May 16, 2017).

Here, the parties state perfunctorily in their joint letter that the releases are mutual and will bring finality to this litigation, and argue that the release is not overbroad in that it does not appear that Plaintiff has any additional claims against Defendants at this time. (Doc. 54, at 3.) Although some courts in this district have approved release provisions on the basis of their mutuality, *see, e.g.*, *Daniels v. Haddad*, No. 17-CV-8067 (RA), 2018 WL 6713804, at *1 (S.D.N.Y. Dec. 17, 2018) (approving general mutual release where the parties provided "a concrete and persuasive explanation of the practical benefit plaintiff stands to realize in exchange for broadly releasing all claims against Defendants.") (internal quotation marks omitted); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016), the

parties offer no basis for finding that this release provision provides Plaintiff any benefit, comparable or otherwise.  The asymmetry between the Agreement's definitions of "Releasor" and "Releasees" casts further doubt upon the fairness of the releases.  *See, e.g.*, *Souffrant*, 2020 WL 1166231, at *2 (noting that although releases were "mutual to the extent that both sides release and waive all of their claims against one another," they were nonetheless "not mutual in terms of their breadth or extent," in that they provided that plaintiff would release the defendants' "current and former employees, members, shareholders, board members, mortgagors, insurers, and counsel," while defendants would release plaintiff's "predecessors, successors, heirs, officers, agents, employees, directors, shareholders, assigns, administrators, affiliates, servants, legal representatives and attorneys") (internal quotation marks omitted).  Moreover, I previously dismissed all of Defendants' counterclaims against Plaintiff in the instant lawsuit, *Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880 (VSB), 2021 WL 102651, at *7 (S.D.N.Y. Jan. 12, 2021), and the parties do not raise the specter of other pendent litigation against Plaintiff from which a release would confer any advantage on Plaintiff.

Accordingly, the release provision does not meet the standards for approval established by courts in this district, and dooms the parties' settlement.

### III. Conclusion

For the foregoing reasons, I find that the overbroad release in the proposed settlement agreement and the lack of adequate documentation for the parties' attorney's fees and costs request render the agreement not fair and reasonable.  Accordingly, the parties' request that approve the proposed settlement agreement is DENIED without prejudice.  The parties may proceed by either:

1. Filing a revised proposed settlement agreement within thirty (30) days of the date of this Order that cures the deficiencies discussed above; or

2. Filing a joint letter within thirty (30) days of the date of this Order that either (1) requests an extension of time or (2) indicates the parties' intention to abandon settlement, at which point I will set a date for a status conference.

SO ORDERED.

Dated: July 8, 2021
New York, New York

_____
Vernon S. Broderick
United States District Judge